Lemire, James R., J.
The plaintiffs, Paul and Sandra Abdella (“Abdellas”), filed this action against an oil company that spilled oil in the Abdellas’ basement and various contractors and subcontractors hired to reme-diate the spill. The Abdellas claim that the defendants acted unfairly and deceptively in failing to complete or in improperly completing the work that each undertook. For the reasons that follow, the defendants’ motions to dismiss are ALLOWED.
BACKGROUND
The facts, taken as true from the complaint and viewed in the light most favorable to the Abdellas, are as follows. On January 15,2004, defendant Harris Oil, Inc. (“Harris Oil”) released oil into the Abdellas’ basement during a deliveiy to their residence in North Oxford, Massachusetts. The Abdellas initiated a lawsuit in Middlesex Superior Court against Harris Oil and the remediation contractor it hired, defendant Hydro Environmental Technologies Inc. (“Hydro Environmental”) [3], [4] The parties to the Middlesex Superior Court action entered into a settlement agreement dated August 2, 2007 (“Settlement Agreement”), whereby the Abdellas agreed to dismiss their complaint in the Middlesex Superior Court action in return for a total of $310,000.00 and a complete remediation of their property.[5], [6] Pursuant to the Settlement Agreement, the Abdellas signed a release dated August 4, 2007 (“Release”).[7] The Release provides the following:
The [Abdellas] ... do hereby release, acquit and forever discharge Hydro Environmental Technologies, Inc. and . . . Harris Oil, Inc . . . and their, or its agents, servants, successors, heirs, executors, administrators and all other persons, corporations, firms, associations or partnerships, contractors, subcontractors, associates, members, directors, stockholders, officers, agents, servants, attorneys, employees, personable and legal representatives, and their successors and assigns ... of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the [Abdellas] now have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from all disputes relating to any breach of contract, personal injuiy, negligence, any claim arising out of M.G.L. Ch. 93A or M.G.L. Ch. 176D, [ ] or any other claim that [the Abdellas] now ha[ve], will have or ever had more especially on account of any loss or damage allegedly sustained by reason of the release of oil which occurred on or about January 15, 2004 and subsequent remediation, which are the subject of [the two Superior Court actions], whether or not such claims are known, suspected, patent or latent, in tort, contract, indemnity, contribution, negli *645 gence, or whether or not they arise under M.G.L. Ch. 93A or M.G.L. Ch. 176D, or on any other theoiy, whether at law [or] in equity and whether or not such claims or any of the underlying events upon which they may be based have yet arisen or occurred.
[[Image here]]
The [Abdellas] further declare and represent that no promise, inducements or agreement not herein expressed has been made to [them] . . .
The [Abdellas] acknowledge that they have had the benefit of, or the opportunity to consult with legal counsel to review the terms and conditions of this release and have signed their names hereto voluntarily and of their own free act and deed.
Harris Oil hired Hydro Environmental as a contractor and subcontractor to perform work required under the Settlement Agreement. Hydro Environmental, in turn, hired defendants Seibold Plumbing and Heating, Inc. (“Seibold Plumbing”), GV Engineering, LLC (“GV Engineering”), TMC Services, Inc. (“TMC Services”), and Pioneer Oil Company, Inc. (“Pioneer Oil”) (collectively, “subcontractor defendants”) to perform specific services at the Abdellas’ property. The Abdellas allege that Harris Oil and Hydro Environmental failed to perform all of their obligations under the Settlement Agreement, and that the subcontractor defendants performed their services negligently.
DISCUSSION
I. Motion to Dismiss Standard
When evaluating the legal sufficiency of a complaint pursuant to Mass.RCiv.P. 12(b)(6), the court accepts as true all of the factual allegations of the complaint, and draws all reasonable inferences from the complaint in favor of the plaintiff. See Nader v. Citron, 372 Mass. 96, 98 (1977), abrogated on other grounds by Iannacchino v. Ford Motor Co., 451 Mass. 623 (2008). To survive a motion to dismiss, a complaint must set forth the basis for the plaintiffs entitlement to relief with “more than labels and conclusions.” Iannacchino, 451 Mass. at 636, quoting Bell Atl Corp. v. Twombly, 550 U.S. 544, 555 (2007). While factual allegations need not be detailed, they “must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact)...” Id. At the pleading stage, Mass.R.Civ.P. 12(b)(6) requires that the complaint set forth “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief . . .” Id., quoting Bell Atl Corp., 550 U.S. at 557.
II. Analysis
In their respective motions to dismiss, the defendants cite the Release as a bar to the Abdellas’ claims. The Abdellas argue that the Release is invalid as to claims not existing at the time of the Release’s execution, i.e., the claims they now bring, because it was intended to cover only the underlying Superior Court actions and because “a release of a future demand, not then in existence, is void.” Hastings v. Dickinson, 7 Mass. 153, 155 (1810). The court agrees that the Release controls here and prohibits the Abdellas’ claims.[8]
At the outset, the court notes that “Massachusetts law favors the enforcement of releases.” Sharon v. Newton, 437 Mass. 99, 105 (2002). The Abdellas’ argument that the Release’s signatories intended it to apply only to the underlying court actions is belied by the language of the Release. It provides that the Abdellas release Harris Oil and Hydro Environmental, and their contractors and subcontractors,
of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever ... or any other claim that [the Abdellas] now ha[ve], will have or ever had more especially on account of any loss or damage allegedly sustained by reason of the release of oil which occurred on or about January 15, 2004 and subsequent remediation, which are the subject of [the two Superior Court actions.]
Courts have interpreted such releases, i.e., broad language followed by the identification of a specific matter, to be general releases encompassing any and all claims. See Eck v. Godbout, 444 Mass. 724, 728 (2005), citing Glendale Coal Co. v. Nesson, 312 Mass. 293, 294 (1942).[9] “If the parties intended that there be limitations or exceptions to the scope of the release[ ], then they should have so stated.” Atlas Tack Corp. v. Crosby, 41 Mass.App.Ct. 429, 433 (1996).
As for the Abdellas’ argument that the Release does not include “future” claims that were unknown at the time they signed the document, more recent caselaw has held differently than Hastings. It is now recognized that “a right which has not yet arisen . . . may be released.” Cormier v. Central Mass. Chapter of Nat’l Safety Council, 416 Mass. 286, 288 (1993) (citation omitted); see also Atlas Tack Corp., 41 Mass.App.Ct. at 432-33 (releases “written in the broadest, most general terms . . . encompass liability for all claims and causes of action, including the possibility of future liability”). Thus, where the Release explicitly includes claims that the Abdellas “now have or which may hereafter accrue” due to “any and all known and unknown” harm, including claims arising out of the oil spill “whether or not such claims are known, suspected, patent or latent,” it encompasses claims that the Abdellas may not have known about when they signed the Release. See Leblanc v. Friedman, 438 Mass. 592, 597 (2003) (no dispute about parties’ intention regarding temporal scope of release where it included claims both “known and unknown”); see also Eck, 444 Mass. at 728 (“[BJroad wording in the release operates to settle all other, unrelated matters, even if *646 they were not specifically in the parties’ minds at the time the release was executed”).
Finally, the court notes that the Abdellas do not allege that they were induced to sign the Release by fraud, deceit, or any other wrongful conduct, or that they did not have the opportunity to read the Release. See Cormier, 416 Mass. at 288, 289. Indeed, the Release specifically states that the Abdellas “declare and represent that no promise, inducements or agreement not herein expressed has been made to [them]” and that they “have signed their names hereto voluntarily and of their own free act and deed.” Further, in signing the Release, the Abdellas “acknowledge^] that they have had the benefit of, or the opportunity to consult with legal counsel to review the terms and conditions of this release."
ORDER
Based on the foregoing, it is hereby ORDERED that the motions to dismiss of Harris Oil, Hydro Environmental, Seibold Plumbing, GV Engineering, TMC Services, and Pioneer Oil be ALLOWED.

The Abdellas also sued one of Hydro Environmental's Licensed Site Professionals, who worked on the remediation of the Abdellas’ house. He is not a party to the current lawsuit.

information about the Middlesex Superior Court lawsuit comes from the complaint in that action, which one of the defendants attached to their motion to dismiss here. Because that complaint is a record from another judicial proceeding in the Superior Court, this court may consider it though it is outside the pleadings. See Reliance Ins. Co. v. Boston, 71 Mass.App.Ct. 550, 555 (2008).

The Abdellas also agreed to dismiss a complaint they filed in Worcester Superior Court, which alleged violations of G.L.c. 93A by Harris Oil and its insurer.

The Abdellas attached a copy of the Settlement Agreement to their complaint, and the court’s consideration of the document is therefore permissible under Mass.R.Civ.P. 12(b)(6). See Reliance Ins. Co., 71 Mass.App.Ct. at 555.

The Abdellas attached a copy of the Release to their complaint. See supra note 6.

Each of the defendants asks the court to award fees and costs pursuant to G.L.c. 231, §6F. That statute requires that the court make “a separate and distinct finding” after a hearing that the Abdellas’ claims “were wholly insubstantial, frivolous and not advanced in good faith.” Given that the court will dismiss all of the Abdellas’ claims, the defendants may seek such a hearing before the court.

As the Eck court stated,
It is a common expression used in releases to identify the specific dispute that motivated the parties to enter into the release, and to make clear that claims stemming from that dispute are being released, but it is not intended to limit the generality of any prior, broad description of the full extent of claims being released.
444 Mass. at 729 (emphasis added).