7 Mass. App. Ct. 763                763

Powell's General Contracting Co., Inc. *v.* Marshfield Housing Authority.

## POWELL'S GENERAL CONTRACTING CO., INC. *vs.* MARSHFIELD HOUSING AUTHORITY.

Suffolk. March 8, 1979. — June 15, 1979.

Present: HALE, C.J., GOODMAN, & DREBEN, JJ.

*Contract*, Performance and breach. *Practice, Civil*, Master.

A provision of a contract for construction of a housing project providing that disputes should be decided by the architect subject to appeal to the Commissioner of Community Affairs did not deprive a master of jurisdiction and could be waived by the parties, with the result that a party who litigated a dispute before a master without raising, either before the judge prior to the commencement of the master's hearings or before the master, the issue of the binding nature of a prior decision of the dispute by the Commissioner was not allowed to claim in this court that the Commissioner's decision was binding and the master's proceedings a nullity. [766-768]

Where an action by a construction contractor against a housing authority was referred to a master with instructions that he not report the evidence before him, a contention on appeal which relied on documents not included in the master's report and whose inclusion had not been sought by the party desiring to rely on them, was not properly before this court. [768]

In an action by a construction contractor against a housing authority, which was referred to a master with instructions that he not report the evidence before him, it was incumbent on the defendant, in a timely manner, to ask clarification of the master's findings or move to recommit the action to him, and the master's findings were binding on this court in the absence of any inconsistency on the face of the master's report. [768-769]

CIVIL ACTION commenced in the Superior Court on October 28, 1975.

The case was heard, on a master's report, by *Silverman*, J., a District Court judge sitting under statutory authority.

*Joseph M. Corwin (Sally A. Corwin* with him) for the defendant.

*Philip M. Cronin* for the plaintiff.

DREBEN, J. This is an appeal from the judgment based on a master's report awarding damages of $194,533 to the plaintiff contractor in a dispute arising out of the construction of a housing project for the Marshfield Housing Authority (Marshfield). The three main issues raised by Marshfield in its appeal are whether the judge erred: (1) in failing to rule that the parties were bound by a decision of the Department of Community Affairs to which the dispute had been referred; (2) in failing to rule that most of the work performed by the contractor and found by the master to have been occasioned by changed conditions was required under the contract and, hence, did not entitle the contractor to extra compensation; and (3) in failing to calculate correctly the prices and amounts of peat and gravel. As hereinafter modified, the judgment is affirmed.

The facts of the dispute are derived from the master's report. In October, 1972, Powell's General Contracting Co., Inc. (Powell's), and Marshfield entered into a $1,266,092 construction contract. One clause of the contract[1] provided that if subsurface or latent conditions were found by the architect to be "materially different" from those shown in the contract documents, he should at once make changes in the drawings and should, subject

---

[1] "Should the Contractor or the Authority encounter during the progress of the work, subsurface or latent conditions at the site materially different from these shown on the Drawings or indicated in the Specifications, the attention of the Architect and the Commissioner of the Department of Community Affairs shall be called immediately to such conditions before they are disturbed. If the Architect finds that they materially differ from those shown on the Drawings or indicated in the Specification, he shall at once make such change in the Drawings or Specification as he may find necessary, and the Architect shall determine an extension of time resulting from such changes, and any change in price, subject to approval by the Commissioner of the Department of Community Affairs."

to the approval of the Commissioner of Community Affairs, determine the change in price. The master found that subsurface conditions were materially different from those shown, and that the architect acknowledged this difference. The borings showed little or no peat (material which had to be removed) while in fact peat was found in over eighty percent of the site. Also, unknown to the parties, there was an underground lake or stream beneath the project. The combination of peat and water caused vast portions of the site to become a quagmire. Matters were aggravated by Marshfield's delay in installing the storm drains required by the contract.

As soon as the changed conditions were discovered, the parties met, and it was agreed that the peat should be removed. At subsequent meetings other work was authorized by the architect or Marshfield, and both were aware of the additional work as it was being performed by Powell's. The latter prepared change proposals and presented them to the architect. Only one change order issued, and only one change proposal was approved. The architect agreed, however, to present Powell's extra costs to Marshfield for review.

Despite numerous meetings, the parties did not reach an agreement as to the amount Powell's was to be paid, and in September, 1973, Powell's submitted the dispute to the Commissioner of Community Affairs pursuant to Article 19 of the contract. That clause in part provided: "All disputes arising under this contract shall be decided by the Architect subject to the right of appeal to the Commissioner of the Department of Community Affairs whose decision shall be final." Although a number of conferences were held, no action was taken by the department prior to the time this action was filed on October 28, 1975. On May 18, 1976, Powell's moved that the case be heard by a designated master "with hearings to begin not before September 20, 1976." The motion was assented to by Marshfield and allowed by the court. Prior to the commencement of the master's hearings in September, a

"Dispute Decision" dated June 25, 1976, and "Addenda" dated August 24, 1976, were sent to the parties by the department. These documents awarded Powell's a total of $39,128.

1. Marshfield claims that Article 19 of the contract provides the method for settling disputes, and that the decision of the Department of Community Affairs is binding upon the parties and should have been implemented by the court.

However, in the circumstances of this action, it is now too late for Marshfield to make this claim. The effect of the decision of the department should have been brought to the attention of the trial judge prior to the commencement of the master's hearings. The order of reference provided that hearings were to begin on September 20, 1976. From June 25 until September 20, 1976, it was open to Marshfield to move to vacate the order of reference on the ground that the decision of the department had resolved the dispute, and to claim that the only review was for the court, and not the master.[2]

Marshfield did not choose that route. It participated in lengthy litigation before the master during which voluminous evidence was introduced. No objection to the form of the proceedings or to the admission of such evidence is apparent in the record. See *Bouchard* v. *Bouchard*, 313 Mass. 531, 535 (1943). The master found that the departmental conferences were informal meetings to reach a settlement and that there was no final decision by the commissioner. He also concluded that the "decision" was not supported by substantial evidence. After the master sent counsel copies of his draft report, Marshfield's then counsel did not even respond, although the express purpose of a draft report, as stated in Mass.R.

---

[2] General Laws c. 30, § 39J (inserted by St. 1961, c. 538, § 1), which is applicable to the present contract, provides, inter alia, that notwithstanding any contrary contractual provision, a decision of an architect or board shall not be final if it is arbitrary or unsupported by substantial evidence.

Civ.P. 53 (e) (5), 365 Mass. 820 (1974), is to receive suggestions of counsel. After the final report was filed, the defendant objected to the findings of the master relating to the department's decision on the ground that they were conclusions of law. Even if we were to consider this objection as raising the issue of the binding nature of the departmental decision, it would not help Marshfield. In so far as indicated by the record, it was only after the conclusion of the hearings and after the final decision of the master that Marshfield objected. It was then too late. The defendant could not lie by and allow the hearings to continue taking its chances for a more favorable result than reached by the department, and only after receiving an adverse award, claim that the departmental decision was binding and the master's proceedings a nullity.[3] See *Maynard* v. *Frederick*, 7 Cush. 247, 250 (1851).

The disputes clause of the contract, as any other clause, can be waived by the parties. *Sikora* v. *Hogan*, 315 Mass. 66, 71 (1943). Article 19 did not deprive the master of jurisdiction. *Tumim* v. *Palefsky, post* 847 (1979). By relitigating the underlying dispute without seeking a ruling as to the propriety of the master's hearings, and by not objecting until after his final report, Marshfield waived its right to a binding departmental decision.[4] *National Merchandising Corp.* v. *Leyden*, 370 Mass. 425, 434 (1976).

---

[3] Marshfield concedes that a finding made by the master on count one requires an addition to the departmental award.

[4] Since the departmental decision is not binding, it does not matter whether the decision was a final one or whether it was supported by substantial evidence. In any event, in so far as Marshfield is asserting that the departmental award was supported by substantial evidence, as distinguished from its claim that review is for the court and not the master, that argument also fails. Marshfield has not laid any foundation in the record for this assertion or for its claim that the master incorrectly substituted his findings based on evidence before him for findings of the department made on evidence submitted at the departmental hearings. There is no indication that Marshfield attempted to limit the order of reference to the master, or, as noted above, that it objected to the admission of evidence before him.

*Jones* v. *Wayland,* 374 Mass. 249, 252 n.3 (1978). See *Bennett* v. *United States,* 371 F.2d 859, 864-865 (Ct. Cl. 1967).

2. We turn next to Marshfield's claim that the judge erred in failing to rule that the contract precludes additional compensation to Powell's for extra work. In making this claim, Marshfield relies on borings, specifications, a change order and other documents not included in the master's report. The order of reference directed the master not to report the evidence before him. There was no motion to recommit, amend the order of reference or other attempt to have these documents made a part of the record, and they were not properly before the trial judge at the time of the hearing on the adoption of the master's report. They are, therefore, not before us. *M.L. Shalloo, Inc.* v. *Ricciardi & Sons Constr., Inc.,* 348 Mass. 682, 686-687 n.5 (1965). Cf. *Jet Spray Cooler, Inc.* v. *Crampton,* 377 Mass. 159, 161 n.4 (1979).

3. Marshfield also contends that the master failed to read the plans correctly and failed to compute in accordance with the contract the quantities and prices of peat removed and replaced. Here again, Marshfield relies on borings and other evidence not a part of the record. Moreover, the claimed misunderstandings and miscalculations relate, in part, to findings 15, 16, 17, 62, 63, 64, and 65 of the master's report to which no objection was made. Marshfield has shown no inconsistency on the face of the report, and the master's findings are binding on us. *Wormstead* v. *Town Manager of Saugus,* 366 Mass. 659, 660 (1975).

4. There remain two additional matters raised by Marshfield. One relates to the reimbursement of Powell's for $7,869 paid to engineers to measure the amount of peat removed and for related services. According to finding 29 of the master's report, it had been agreed that Powell's should continue to remove peat, "check for depth" and confirm the depth with Marshfield's clerk of the works; the finding also sets forth that the understanding between the parties was contained in a letter, not in

the record, dated November 9, 1972. There are findings that the architect assented to the procedure involving the engineers and that Powell's acted prudently in hiring them. If there remains any ambiguity or incomplete statement in the master's report as to whether the agreement concerning the removal of peat included payment to the engineers, it was incumbent on Marshfield to call the master's attention to it upon receipt of the draft report, or failing that, to move to recommit for clearer findings. There is no inconsistency shown on the face of the report and the findings, which include an amount for the engineers' fee, are binding on us. See *Bills* v. *Nunno*, 4 Mass. App. Ct. 279, 281, 282-283 n.3 (1976).

The final matter relates to an $8,000 allowance to Powell's for latent subsoil conditions which both parties agree was contained in the contract. The only argument is whether the master accounted for the $8,000 in arriving at his determination of damages under count 4 of the complaint. The master's subsidiary findings show specifically how he computed the amount, and indicate that the $8,000 allowance was not deducted. For this reason, the amount of the damages in paragraph two of the judgment is to be reduced by $8,000. As so modified, the judgment is affirmed.

*So ordered.*